I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE

DATED: _____

_____
DEPUTY CLERK

FILED
CLERK, U.S DISTRICT COURT
AUG - 4 2000
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
AUG - 8 2000
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRA VINCENT SPEARMAN, | CASE NO. CV 00-2085 DT |
| Petitioner, | CASE NO. CR 93-1027 DT |
| vs. | ORDER **DENYING** DEFENDANT'S MOTION TO VACATE CONVICTION UNDER 28 U.S.C. § 2255 |
| UNITED STATES, | |
| Defendant. | |

## Background

### A. Factual Summary

Ira Vincent Spearman ("Defendant") had been convicted of a previous felony. (09/01/94 RT 64-65, 72.) On October 25, 1993, Defendant's probation officer, Los Angeles County Deputy Probation Officer Madeline Kopp, and law enforcement officers conducted a probation search of Defendant's residence.

Prior to conducting the search, officers observed Defendant for several hours. Deputy Kopp and other members of the search team approached Defendant when he exited his residence through the back door. He provided the keys that the search team

DOCKETED
MLD COPY PTYS
MLD NOTICE PTYS
JS-6

ENTERED ON ICMS
AUG - 8 20

used to enter. During a preliminary sweep, no other occupants were found. During the sweep, Deputy Kopp and Special Agent ("SA") Brad Galvan of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") saw several baggies containing rock cocaine on top of an entertainment center in the living room. In the kitchen, they saw a gun. In the master bedroom, they saw what appeared to be drugs and a large amount of cash in plain view. (08/31/94 RT 55-56, 70-71; 09/01/94 RT 77-78).

After making these observations, SA Galvan and Deputy Kopp went outside to speak with Defendant. Defendant was advised of and waived his <u>Miranda</u> rights. He claimed that he had purchased the weapons found in his home "on the streets." Although he knew that his prior felony convictions prohibited him from possessing guns, he felt that he needed them "for protection." (08/31/94 RT 56-58; 09/01/94 RT 79-88, 94-95).

Agents then conducted a thorough search of Defendant's residence. This search yielded several grams of cocaine, three loaded guns and ammunition, thousands of dollars in cash, pay/owe sheets, and an Ohaus triple-beam scale.

B. **Procedural Summary**

On December 3, 1993, a federal grand jury returned a three-count indictment charging defendant with possession with intent to distribute approximately 59.39 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1); use of three firearms "during and in relation to" the charged narcotics trafficking offense, in violation of 18 U.S.C. § 942(c); and possession of a

firearm after being convicted of the felonies of robbery, unlawful sexual intercourse with a minor, possession of a controlled substance, and possession of cocaine for sale, in violation of 18 U.S.C. § 922(g). (CR 1).

On August 30, 1994, Defendant's jury trial commenced. (CR 59).

On September 6, 1994, the jury returned a verdict of guilty on all counts. (CR 69).

On May 15, 1995, the Court sentenced Defendant. The Court imposed the mandatory sentence of life in prison on the drug trafficking conviction plus a consecutive 60-month term of imprisonment on the conviction for using a firearm during and in relation to the drug trafficking. In addition, the Court sentenced Defendant to 120 months in prison for the felon in possession conviction to be served concurrently with the life term. (CR 111; 05/15/95 RT 1-43).

Defendant then appealed his conviction. In a memorandum disposition filed on September 3, 1996, the Ninth Circuit affirmed Defendant's convictions for possession with intent to distribute cocaine base and felon in possession of a firearm, reversed Defendant's conviction for using or carrying a firearm during and in relation to a drug trafficking crime and remanded the case for resentencing.

On May 12, 1997, this Court held a hearing during which it filed and spread its mandate and was prepared to reimpose the life sentence. At the hearing, Defendant requested a new

1 attorney, which the Court denied. (CR 123). However, the Court
2 granted defendant's request for a continuance of the resentencing
3 hearing until June 2, 1997.

4     At a June 2, 1997, hearing, the Court continued
5 Defendant's resentencing until July 7, 1997, and ordered the
6 probation office to prepare an updated probation report. (CR
7 126).

8     On June 27, 1997, at the parties' request, the Court
9 granted a continuance of Defendant's resentencing date to July
10 28, 1997, in order to allow the parties time to respond to the
11 supplemental presentence report. (CR 127).

12     On July 25, 1997, Defendant requested a one-week
13 continuance of the sentencing date in order to allow him time to
14 try to find an expert who would testify regarding personal use of
15 cocaine base. (CR 130). That same day, the Court denied
16 Defendant's requested continuance. (CR 131).

17     On July 28, 1997. the court sentence Defendant to life
18 in prison on the drug trafficking conviction and 120 months to be
19 served concurrently on the felon in possession conviction. (CR
20 134).

21     Defendant appealed the sentence imposed. On January
22 14, 1999, the Ninth Circuit affirmed the sentence.

23     On February 29, 2000, Defendant filed a petition
24 pursuant to 28 U.S.C. § 2255 seeking to overturn his conviction
25 or in the alternative to vacate his sentence. This petition is
26 currently before this Court.

27
28                                     4

## II. Discussion

### A. Standard

Any prisoner in custody under sentence of a federal court may file a motion

> claiming the right to be released upon ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

22 U.S.C. § 2255.

In such a motion, the prisoner "may move the court which imposed the sentence to vacate, set aside or correct the sentence." Id. The petitioner has the burden of proving that his sentence is invalid in a Section 2255 motion. United States v. Edmonson, 922 F.Supp. 505 (D.Kan. 1996), aff'd 107 F.3d 22 (10th Cir. 1997), cert. denied, 521 U.S. 1128, 117, S.Ct. 2531, 138 L.Ed.2d 1030 (1997).

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was

not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

A court may entertain and determine [a habeas corpus] motion without requiring the production of the prisoner at the hearing. . . .

An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255.

B. **Analysis**

In his petition, Defendant argues (1) that the district court allowed the introduction into evidence of several pay/owe sheets that were not properly authenticated, claiming that the court allowed improper expert testimony regarding handwriting;

6

(2) that the district court did not conduct sufficient evidentiary hearings to determine whether a portion of the drugs found at Defendant's apartment were for personal use; and (3) that his counsel was ineffective regarding the previous issues raised and for failing to call his sister as a witness.

In the opposition to Defendant's petition, the Government argues that these claims are procedurally barred and lack merit.

### 1. Defendant's Claim Regarding The Pay/Owe Sheet Evidence Is Procedurally Barred Because He Can Neither Show Cause For His Procedural Default Nor Demonstrate Prejudice Arising From The Claimed Error.

Defendant claims that the Court allowed several pay/owe sheets to be introduced into evidence when they were not properly authenticated. However, Defendant did not raise this claim on direct appeal. Failure to raise a claim at trial or on direct appeal will generally result in the waiver of the claim. See United States v. Frady, 456 U.S. 152, 162-66, 102 S.Ct. 1584, 1592-93, 71 L.Ed.2d 816 (1982). Grounds which were apparent when the appellant originally appealed his conviction cannot be made the basis for another attack on the conviction by a motion to set aside the judgement. See Hammond v. United States, 408 F.2d 481, 483 (9th Cir. 1969).

An exception to the defendant's waiver of claims that were not raised earlier exists where the defendant is able to (a)

show cause for the procedural default and (b) demonstrate prejudice arising from the claimed error. See Murray v. Carrier, 477 U.S. 478, 485-86, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986). Pursuant to this test, review of waived claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. See Frady, 456 U.S. at 167-69.

During the trial, Defendant's counsel properly cross-examined the government's witnesses concerning the pay/owe sheets, arguing to the jury that their testimony did not prove that Defendant actually wrote them. Defendant does not offer an explanation for his failure to raise the issue of the sheets' authenticity on direct appeal. Because he does not provide an explanation for this omission, Defendant has not shown cause for his procedural default.

Defendant claims that the pay/owe sheets were improperly authenticated because a non-expert performed handwriting analysis. Fed. R. Evid. 901(a) provides that the requirement of authentication is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). In this case, the Government presented expert testimony to prove that the exhibits in question were actually pay/owe sheets. Defendant does not dispute the accuracy of this testimony. Instead, he

argues that the court admitted improper testimony regarding his handwriting.

Exhibit 15D was a Fernando's Lumber Receipt that was found in the nightstand next to Defendant's bed. Exhibit 16D was a pink notebook that was found on the dresser in Defendant's bedroom. The government did not present any testimony pertaining to the handwriting on either of these items. Instead, the government's expert witness testified that they were actually pay/owe sheets. Both sheets were admissible as evidence not because they were written by Defendant, but because they was found in Defendant's bedroom during a search of his residence and because they were found in the presence of large quantities of cash and other evidence of drug trafficking activity.

The government also introduced another pay/owe sheet written on the back of a probation department notice report containing Defendant's name. The government's witness testified that the name signed on this document appeared to be "Ira Spearman," but he did not affirmatively state that the signature was Defendant's. Like the other two pay/owe sheets, it was properly admitted because it was found during the search of Defendant's home. Thus, Defendant cannot demonstrate that actual prejudice resulted from the alleged violation of the evidence rule. Consequently, because Defendant does not meet the requirements of the exception to his waiver of claims as set forth in Murray v. Carrier, supra, this Court finds that Defendant's claim concerning the pay/owe sheet evidence is procedurally barred.

### 2. Defendant's Claim Regarding His Personal Use of Crack Cocaine Is Procedurally Barred Because This Claim Was Adjudicated Previously On Direct Appeal.

Defendant claims that the district court did not conduct sufficient evidentiary hearings to determine whether a portion of the drugs found at Defendant's apartment were for personal use. However, a Section 2255 motion is precluded if it raises claims that were previously decided on direct appeal. See United States v. Currie, 589 F.2d 993, 994 (9th Cir. 1979). "Although principles of res judicata do not bar a prisoner from relitigating on habeas corpus or under § 2255 or on coram nobis issues raised in the original appeal, a district court nay refuse to entertain a repetitive petition absent a showing of manifest injustice or a change in the law." Polizzi v. United States, 550 F.2d 1133, 1135 (9th Cir. 1976).

Defendant has raised this issue previously both at trial and on direct appeal. At those times, Defendant cited United States v. Kipp, 10 F.3d 1463 (9th Cir. 1993), which held that a district court must subtract the quantity of drugs that a defendant possessed for personal use from the quantity that he or she possessed for sale during sentencing for violation of 21 U.S.C. § 841. There has been no subsequent change in the law. The government did not dispute the holding of Kipp. Rather, the government demonstrated its inapplicability to this case by proving that Defendant possessed all of the cocaine base found in his residence for sale, not for personal use. On appeal, the Ninth Circuit found the government's proof "overwhelming."

Therefore, since Defendant does not show manifest injustice or a change in the law, this Court finds that the issue of personal use is precluded.

### 3. Defendant's Ineffective Assistance of Counsel Claim Is Without Merit Because He Does Not Identify Objectively Unreasonable Behavior.

Defendant claims that his counsel was ineffective for failing to raise claims (1) and (2) and for failing to call his sister as a witness. The Supreme Court set forth the standard for ineffective assistance of counsel claims in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88, 104 S.Ct. at 2064 (citations and internal quotations omitted). The reasonableness of counsel's challenged conduct must be judged according to the standards "as of the time of counsel's conduct," not the standards prevailing at the time the challenge is brought. Strickland, 466 U.S. at 690, 104 S.Ct. at 2066. In addition, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Strickland, 466 U.S. at 692, 104 S.Ct. at 2067.

Defendant has not identified any behavior that "fell below an objective standard of resonableness." First, Defendant cannot demonstrate that either his trial counsel or his appellate

11

counsel was ineffective regarding treatment of the pay/owe sheet evidence. His trial counsel, Deputy Federal Public Defender Gerald Salseda, objected to this evidence during the trial, but his objection was properly overruled by the court. Defendant's appellate counsel did not raise this issue on direct appeal because it lacked merit.

Second, Defendant cannot demonstrate that his counsel was ineffective regarding his statement that the cocaine found in his residence was purchased for his personal use. His appellate counsel has raised this claim previously on direct appeal. In response, the Ninth Circuit found that Defendant was unable to demonstrate prejudice. The court decided that:

> In light of the abundant evidence...supporting the court's determination that the drugs found in Spearman's apartment were not for personal use, we cannot say that the absence of expert testimony on the personal use was prejudicial. See United States v. Schaflander, 743 F.2d 714, 719-720 (9th Cir. 1984)(holding that there is no reasonable probability of prejudice when there is overwhelming evidence to the contrary).

Memorandum Disposition at 5-6. Defendant does not present any new information to convince this Court that this claim deserves further consideration.

Third, Defendant cannot demonstrate that his trial counsel was ineffective for failing to call his sister as a witness. Mr. Salseda interviewed Ms. Spearman, Defendant's sister, before the trial. According to Assistant United States

12

Attorney Julie A. Ryan, Mr. Salseda consciously decided not to call her as a witness because he believed that her testimony would be harmful to the defense. See Ryan Decl. at ¶ 3. Based on her pre-trial interview, Mr. Salseda believed that her testimony would contradict the affidavit that she had prepared. See id. Defendant has not provided adequate evidence to prove that Ms. Salseda's testimony at the trial would have been consistent with her affidavit.

Furthermore, as the opposition indicates, even if Ms. Spearman had testified consistently with her affidavit, the jury's verdict in this case would probably not have been different. This testimony would have conflicted with both the physical evidence in the case and Defendant's own statement. For example, in her affidavit, Ms. Spearman claims that her friend Ragtime "ask[ed] could [she] hold three guns" for him. However, Defendant had previously told SA Galvan and Deputy Kopp that he had purchased the guns for his own protection. Thus, because Defendant's counsel's behavior was not objectively unreasonable in any of the three situations that he identifies, this Court finds that Defendant's ineffective assistance of counsel claim is without merit.

////
////
////
////
////
////

13

**C.  Conclusion**

Based on the foregoing discussion, as well as the reasons set forth and incorporated by reference herein in the Government's Opposition to Defendant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, this Court hereby **DENIES** Defendant's Motion to Vacate Conviction under 28 U.S.C. § 2255.

IT IS SO ORDERED.

DATED: 8/4/2000

_____
Dickran Tevrizian, Judge
United States District Court

14